UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Lilian Alonzo

   v.                                    Civil No. 16-cv-337-JD
                                         Opinion No. 2017 DNH 081
United States of America


O R D E R

Lilian Alonzo brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., ("FTCA"), alleging that an agent of the United States Drug Enforcement Agency ("DEA"), Michael Connolly, negligently shot Alonzo while he was searching her home pursuant to a warrant.[1] The government moves to dismiss the suit for lack of subject matter jurisdiction. Alonzo objects.

Standard of Review

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the court takes as true the properly pleaded facts in the complaint and draws reasonable inferences in the plaintiff's favor. Reddy v. Foster, --- F.3d ---, 2017 WL 104825, at *2 (1st Cir. Jan. 11, 2017). The court also considers the evidence submitted by the parties. Carroll

---

[1] The government represents that Connolly is now retired.

v. United States, 661 F.3d 87, 94 (1st Cir. 2011). The party asserting federal subject matter jurisdiction, the plaintiff in this case, bears the burden of showing that it exists.[2] Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007).

Background

Beginning in October of 2013, the DEA and the Manchester Police Department were investigating suspected drug trafficking in Manchester, New Hampshire. The investigation focused on Sammy Garcia. Garcia was suspected of working with Jose, Jennifer, and Johanna Nunez.

At that time, Lilian Alonzo lived at 110 Beech Street in Manchester, New Hampshire, and cared for her children and grandchildren there. Jose Nunez is Alonzo's ex-husband, and Jennifer and Johanna Nunez are her daughters. Based on intercepted communications, the DEA suspected that proceeds from drug sales were being stored in Alonzo's apartment.

The court issued a warrant on August 21, 2014, to conduct a search of Alonzo's home, and two other locations, to look for money from Garcia's drug operations. DEA special agents, including Connolly, and Manchester police SWAT team members met at 6:00 a.m. on August 27, 2014, to make a plan for the search.

---

[2] An action brought under the FTCA is tried to the court without a jury. 28 U.S.C. § 2402.

The team knew that on that day Alonzo had at least two grandchildren in the apartment with her. Alonzo had no criminal record and was not charged with a crime.

DEA agents, other than Connolly, were to remain on the perimeter of the building while six team members went to Alonzo's apartment on the third floor. Connolly was assigned the job of "breacher" for the group going into the apartment, meaning that Connolly would use a battering ram to get through the front door. When the group arrived, however, Connolly heard children's voices in the apartment, so he decided not to use the battering ram.

Instead, the officers announced their presence, and someone inside the apartment opened the door. The team members went by Connolly to "clear" the apartment before the search began. When a team member was unable to kick in a locked door, Connolly took over. Connolly held his gun in his left hand while he kicked at the door. When his foot got stuck in the door and then came loose, Connolly lost his balance and fell backwards. As he fell, he accidentally shot his gun.

The bullet struck Alonzo, who was standing in the hall with her young grandchild. The bullet went through Alonzo's left elbow and into her abdomen, which caused blood and tissue to fall onto the child. Alonzo's injuries have required multiple surgeries and rehabilitation.

The court held a hearing on the motion on April 12, 2017. During the hearing, the court heard argument from counsel who reiterated the positions taken in their papers.

## Discussion

Alonzo brings a claim of negligence against the government under the FTCA, arising from the circumstances in which Connelly shot her. The government moves to dismiss for lack of subject matter jurisdiction, on the grounds that Alonzo has not stated a claim under the FTCA. Alonzo objects to the motion to dismiss.[3]

### A. The FTCA

The FTCA waives the sovereign immunity of the United States for certain tort claims and grants jurisdiction in the district courts for those claims. Millbrook v. United States, 133 S. Ct. 1441, 1443 (2013). Subject matter jurisdiction to consider claims under the FTCA exists if a government employee, acting within the scope of his employment duties, causes injury or loss "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.

---

[3] Alonzo noted in her objection that the government appeared to raise official immunity under New Hampshire law without specifically identifying that defense. In its reply, the government explained that it was not raising official immunity for purposes of the motion to dismiss.

4

§ 1346(b)(1).  To determine whether a private person would be liable under the circumstances, the court looks for analogous conduct that would impose liability on a private person.  United States v. Olson, 546 U.S. 43, 47 (2005).

In Olson, 546 U.S. at 45-47, the Supreme Court reiterated that "private person," for purposes of the FTCA, does not mean a public or governmental entity and that "under like circumstances" does not mean the same circumstances.  The Court reviewed its prior decision in Indian Towing Co. v. United States, 350 U.S. 61 (1955), in which it held that liability under the FTCA requires "a court to look to the state-law liability of private entities, not to that of public entities," when considering "'activities which private persons do not perform.'"  Olson, 546 U.S. at 46 (quoting Indian Wells, 350 U.S. at 64).  The "like circumstances" standard includes consideration of circumstances that are different from the actual governmental activity that is questioned.  Olson, 546 U.S. at 47.

The circumstances in Indian Towing are instructive.  There, the plaintiff brought suit after its tugboat, pulling a barge, went aground because a lighthouse, operated by the United States Coast Guard, was not working.  350 U.S. at 61.  The plaintiff asserted that the Coast Guard's negligence in maintaining the lighthouse caused the light to fail and brought suit under the

5

FTCA. Id. The government argued that because private persons do not operate lighthouses, no liability existed under the FTCA. Id. at 64.

The Supreme Court disagreed. The Court explained that the Coast Guard's operation of the lighthouse was analogous to a private person who undertakes to warn the public of danger as a good Samaritan. Id. at 69. In undertaking that activity, a good Samaritan would assume a duty to use due care to make certain that the light was working.[4] Id.

In Olson, the plaintiffs, mine workers and a spouse, brought a claim under the FTCA, "claiming that the negligence of federal mine inspectors helped bring about a serious accident at an Arizona mine" where the miners were injured. 546 U.S. at 45. The government argued that mine inspection would not lead to liability for a state or municipality and that mine inspection was a unique government function. Id. The Court disagreed and concluded that good Samaritan analogies also existed in the context of mine inspection, as in the context of private parties who do safety inspections. Id. at 48. For that reason, liability existed under the FTCA.

---

[4] Importantly, the Court did not consider various state and municipal operations, such as road signs and other warnings of dangers, as analogous activities.

B.  Alonzo's Claim

In this case, Alonzo alleges that Connolly "had a duty to conduct the search of Ms. Alonzo's home with reasonable care under the circumstances, and to avoid conduct which would place officers and the home occupants in foreseeable danger of injury." Compl. Doc. no. 1, ¶ 30. Alonzo further alleges that Connolly breached that duty of care when he kicked in the closed door inside the apartment while holding his loaded gun with his finger on or near the trigger.[5] The government contends that New Hampshire law does not recognize a duty for law enforcement officers to use reasonable care while executing a search warrant during a criminal investigation and that a search conducted by DEA agents is a uniquely governmental action without a private analogue.

C.  Private Analogue

The government characterizes Alonzo's claim as alleging that Connolly negligently executed the search warrant. The government asserts that no private analogue exists for negligent execution of a search warrant because only law enforcement

---

[5] The government is liable under the FTCA for the actions of its employees, "acting within the scope of his office or employment." § 1346(b)(1). Therefore, the defendant in this case is the government under a theory of vicarious liability.

7

officers can obtain and execute search warrants.  See, e.g., Washington v. DEA, 183 F.3d 868, 873 (8th Cir. 1999) (concluding that "the application process for, and execution of, a search warrant has no private analogue").  In this case, however, Alonzo does not challenge either the application process or the execution of the search warrant.  Therefore, even if it were persuasive, the Eighth Circuit's conclusion in Washington does not apply in this case.

The Supreme Court has explained that "all Government activity is inescapably 'uniquely governmental' in that it is performed by the Government."  Indian Towing, 350 U.S. at 67. Nevertheless, the Court stated, "it is hard to think of any governmental activity on the 'operational level' . . . which is 'uniquely governmental,' in the sense that its kind has not at one time or another been, or could not conceivably be, privately performed."  Id. at 68.  For that reason, the FTCA "extends to novel and unprecedented forms of liability."  United States v. Muniz, 374 U.S. 150, 159 (1963).

In Indian Towing and Olson, the Supreme Court held that liability under the FTCA was not premised on governmental or municipal liability for the same or similar activities.  Olson, 546 U.S. at 45-46.  Instead, the court must "look to the state-

law liability of private entities."[6]  Id. at 46.  Applying the rule from Olson and Indian Towing, other courts have found analogies to actions by private persons for governmental activities.

In Mayorov v. United States, 84 F. Supp. 3d 678, 697-701 (N.D. Ill. 2015), the court considered FTCA claims of negligence and false imprisonment, arising from an immigration detainer issued against the plaintiff by ICE officers, and analogized those claims to negligence by a private security contractor and a citizen's arrest.  See also Watson v. United States, 133 F. Supp. 3d 502, 525-26 (E.D.N.Y. 2015).  In Avalos-Palma v. United States, 2014 WL 3524758, at *12 (D.N.J. July 16, 2014), the court analogized wrongful deportation by ICE agents to violations of statutory duties by a private person with supervisory authority over the plaintiff.

The duty of the Ogala Sioux Tribe Public Safety Commission in response to a car accident, specifically the officer's failure to find the car which had gone off the highway, was found to be analogous to the duty of a good Samaritan under

---

[6] In Muniz, which involved two consolidated cases, the plaintiffs brought claims under the FTCA to recover for injuries due to the alleged negligence of the medical staff, in one case, and guards, in the other case, at federal prisons.  374 U.S. at 152.  The Court found that "an analogous form of liability exists" because states "have allowed prisoners to recover from their jailers for negligently caused injuries" and some states allowed suits against the state itself.  Id. at 159-60.

9

South Dakota law. White v. United States, 2014 WL 4782855, at *5-*6 (D.S.D. Sept. 24, 2014). A high speed chase by military police was found to be analogous to a private claim for negligent driving. Stroh v. United States, 2012 WL 4069354, at *6 (D. Colo. Sept. 17, 2012); but see Hetzel v. United States, 43 F.3d 1500, 1503-04 (D.C. Cir. 1995) (prior to Olson, analogizing DEA officer's high speed chase to law enforcement activity). Courts have found no private analogue for government action when the challenged action is quasi-judicial or quasi-legislative rather than operational. Storms v. United States, 2015 WL 1196592, at *19-*20 (E.D.N.Y. Mar. 16, 2015).

Despite the holding in Olson, the Fifth Circuit analogizes federal law enforcement activities, such as actions by DEA agents and Border Patrol officers, to state or municipal law enforcement officers and applies the rules and defenses that are applicable to law enforcement officers under state law. See Mendez v. Poitevent, 823 F.3d 326, 334-35 (5th Cir. 2016); Villafranca v. United States, 587 F.3d 262-64 (5th Cir. 2009). In the context of FTCA claims arising from the plaintiff's detention by immigration officials, the Second Circuit noted that some courts have drawn an analogy to state law enforcement officers but found the more appropriate analogy would be to a private person making a citizen's arrest, although no final ruling was necessary in that case because the result was the

10

same under either analogy. Liranzo v. United States, 690 F.3d 78, 95-96 (2d Cir. 2012). The Eighth Circuit found a private analogy in negligence for an Indian tribe's police department but also noted that the plaintiff did not state a claim even if the state's public duty law would apply. Sorace v. United States, 788 F.3d 758, 763-64 & n.3 (8th Cir. 2015).

Alonzo contends that a private analogue exists in her case for a private person who owns guns and is required to use due care, even in perilous situations. For example, Alonzo suggests, a private person might attempt to enter a locked room while holding a gun, because of concern about the danger in the room, and would be required to use reasonable care in the use of the gun in that situation.[7] Under Olson and Indian Towing, a

---

[7] Analogous circumstances also could arise if a private person suspected that an intruder was in his home and attempted to roust the intruder while holding his gun or if a person accidentally shot another person while in his own house or another person's house. See, e.g., Citizens Ins. Co. of Am. v. Ung, 2 F. Supp. 3d 622, 625 (E.D. Pa. 2014) (finding insurance coverage for negligence action against individual who shot another individual); North Carolina Farm Bureau Mut. Ins. Co. v. Lynn, 2011 WL 4917043, at *3 (N.C. Ct. App. Oct. 18, 2011) (finding insurance coverage for negligence action arising from defendant's shooting of an individual in his home); Am. Family Mut. Ins. Co. v. Larson, 2010 WL 1439687, at *1 (D. Minn. Apr. 13, 2010); Key v. Burchette, 517 S.E.2d 667, 372 (N.C. Ct. App. 1999); Fire Ins. Exchange v. Tibi, 51 F. Supp. 2d 1065, 1069 (D. Mont. 1995). In addition, private security guards and property managers might be armed to protect themselves or private property. See, e.g., Allen v. Bryers, --- S.W.3d ---, 2016 WL 7378560, at *1 (Mo. Dec. 20, 2016) (en banc); Hemings v. Redford Lounge, Inc., 485 N.E.2d 1378, 1380 (Ind. Ct. App. 1985).

private analogy exists in this case to private individuals using guns, including in circumstances that are similar to Connolly's use of his gun while kicking in a door at Alonzo's apartment.[8]

D. Viability of Negligence Claim

Alonzo contends that Connolly owed her a duty to use reasonable care in handling his gun while conducting the search. "To recover for negligence, the plaintiff must demonstrate that the defendant had a duty to the plaintiff, that she breached that duty, and that the breach proximately caused injury to the plaintiff." England v. Brianas, 166 N.H. 369, 371 (2014). In its motion to dismiss, the government challenges the existence of a duty in the circumstances of this case.

"A duty exists, under [New Hampshire] common law, to use reasonable care to avoid foreseeable risks of harm." Copp v. Atwood, 2005 WL 139180, at *2 (D.N.H. Jan. 24, 2005) (citing Goodwin v. James, 134 N.H. 579, 583 (1991)). When a question arises as to whether the defendant owed a duty to the plaintiff, the court must determine "whether the defendant is under any obligation for the benefit of the particular plaintiff." England, 166 N.H. at 371. In other words, the court must

---

[8] New Hampshire allows private persons to own and carry guns. In fact, New Hampshire citizens are now allowed to carry loaded and concealed guns without a license. See Senate Bill 12, signed by Governor Sununu on Feb. 22, 2017, which repealed RSA 159:4.

12

consider "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." Lahm v. Farrington, 166 N.H. 146, 150 (2014) (internal quotation marks omitted).

The government asserts, based on Lahm, 166 N.H. at 154, that Connolly owed no duty to Alonzo because New Hampshire does not recognize any duty owed by police officers to use reasonable care in conducting a criminal investigation.[9] In support, the government contends that the interests of law enforcement officers in conducting their investigations without the restraints imposed by concerns about liability outweigh any duty owed to a criminal suspect. Alonzo contends that Lahm does not limit the duty of police officers to the extent the government asserts and that Lahm does not apply because liability under the FTCA is based on analogous actions by private individuals, not law enforcement officers.

The government's theory is based on its view of the particular relationship between Connolly, as a law enforcement

---

[9] The New Hampshire Supreme Court long ago decided that police officers do have a duty to use reasonable care while performing their duties and that police officers are liable for injuries that they negligently inflict on both those they are arresting and innocent third parties. Am. Motorists Ins. Co. v. Rush, 88 N.H. 383, 190 A. 432, 434 (1937). Although the government argues that Am. Motorists was overruled by Lahm, the New Hampshire Supreme Court did not make that ruling explicitly and the facts of the cases do not show that to be true.

13

officer, and Alonzo, as a criminal suspect. As is explained above, however, Connolly's actions are analyzed in the context of an analogous private person rather than as a law enforcement officer.[10] As a result, the analysis of duty owed by law enforcement in Lahm does not apply here where the court must look to analogous conduct by a private individual rather than a law enforcement officer.

In this case, Alonzo and the children in her home had an interest in being protected from being shot by Connolly while he handled his gun during the search of their apartment. Connelly knew that Alonzo and the children were close by and were at risk if his gun discharged. Therefore, Connolly had a duty to use reasonable care to avoid the foreseeable risk of accidentally shooting his gun, which was loaded with his finger on or near the trigger, while he kicked in a door. Private individuals,

---

[10] The dispute about the appropriate analogy also raises a question of whether state-law affirmative defenses, which apply only to public actors such as law enforcement officers, can be used by the government to avoid liability under the FTCA. The Supreme Court has held that state law immunities cannot limit claims under the FTCA. Muniz, 374 U.S. at 164-65; Rayonier Inc. v. United States, 352 U.S. 315, 318-19 (1957). Whether other state law affirmative defenses may be used by the government to avoid liability under the FTCA has been decided differently by the courts that have addressed the question. See, e.g., Fifer v. United States, 649 F. App'x 426, 428 (9th Cir. 2016); Mendez, 823 F.3d at 335-36; Liranzo, 690 F.3d at 96-96; Begay v. United States, 2016 WL 6394925, at *24-*27 (D.N.M. Sept. 30, 2016); Valdez v. United States, 58 F. Supp. 3d 795, 828-29 (W.D. Mich. 2014).

when using guns, have a specific duty to use reasonable care to avoid injury to people, and a higher degree of care is required when the risk of an accident is considerable.  See Webster v. Seavey, 83 N.H. 60, 138 A. 541, 543 (1927).

As a result, Connolly, whose actions are considered in the context of an analogous private person, had a duty to use reasonable care in handling his gun during the search and neither the holding nor the reasoning in Lahm applies to Alonzo's negligence claim in this case.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 6) is denied.

SO ORDERED.

Joseph DiClerico, Jr.
United States District Judge

April 24, 2017

cc: Megan E. Douglass, Esq.
    Andrew K. Lizotte, Esq.
    H. Jonathan Meyer, Esq.

15